MOOREHEAD v. REALTY ASSOCIATES.

(Supreme Court, Appellate Division, Second Department. March 19, 1915.)

CONTRACTS ⊚⟹131—LEGALITY—PUBLIC POLICY—BROKERAGE CONTRACT.
    Where plaintiff reported defendant's property for assessment, and, pending defendant's protest and hearing thereon, went to its tenant and tried to secure an offer to buy it at its assessment valuation, and thereafter recommended a reduction in such valuation, which was adopted, and then obtained alleged authority from defendant's officers to negotiate a sale of the property on fixed terms, the brokerage contract, if any, arose from plaintiff's activities ex colore officii, and was invalid as against public policy.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 594–607; Dec. Dig. ⊚⟹131.]

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Trial Term, Kings County.

Action by Thomas A. Moorehead against the Realty Associates. From a judgment dismissing his complaint, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

Henry L. Scheuerman, of New York City, for appellant.

Henry M. Dater, of Brooklyn (Jay S. Jones and Edward J. Fanning, both of Brooklyn, on the brief), for respondent.

CARR, J. The plaintiff brought an action against the defendant to recover the sum of $8,700, with interest, as commissions alleged to have been earned by him as a broker in procuring a purchaser for real property owned by defendant. The complaint was dismissed at the close of plaintiff's proofs.

The defendant owned a piece of property on Fulton street, near Flatbush avenue, which was occupied by the Woolworth Company as a tenant. The plaintiff was a deputy tax commissioner in the borough of Brooklyn, and the property in question was within the district assigned to him for the performance of his official duties as a public officer. He reported to the board of tax commissioners that the property should be assessed at the sum of $870,000 for the purposes of general taxation, and it was assessed for such purposes at the valuation reported. The defendant protested against this assessment, and claimed that the property in question, land and buildings, was worth considerably less money. A hearing was had before the tax commissioners, as provided by statute. Decision was reserved. In the meantime the plaintiff went to the tenant of the building, the Woolworth Company, and endeavored to secure an offer from that corporation to buy the property in question at the valuation which he had reported officially for assessment. One of the individuals connected with the Woolworth Company stated to plaintiff that he was willing to make an offer to buy the property, but that his corporation itself was not interested, and that negotiations as to a sale were then going on. Shortly thereafter the plaintiff again reported to the tax commissioners, recommending a reduction in the assessed valuation to the sum of $849,000. His recommendation was adopted, and the original assessment reduced. After this, he went to a Mr. Greve, an officer of the defendant corporation, and likewise to Mr. Bailey, an officer of the same corporation, and, as he claims, he obtained from them authority to negotiate a sale of the property in question if he could produce a proper purchaser at the terms fixed. Apparently he produced a willing purchaser, whose name was Griffin, to call on Bailey to buy the property, but Bailey declined to consider the matter at all. Thereupon this action was brought. Griffin represented the individual sought out by the plaintiff.

The theory of the trial court in dismissing the complaint was that the alleged contract of employment between plaintiff and defendant was against public policy, and should not be enforced by the courts. No opinion was written below, but there is an interesting, and to us

a satisfactory, statement of the trial court's position in the colloquy that arose on the motion to dismiss. If there was any contract of brokerage between the parties, it was one that arose from the plaintiff's activities ex colore officii. He held a quasi judicial office. As a deputy tax commissioner, within his assigned district, he was a person of official power and importance. We must view the world as it is, and the common law has always been keen to see human nature, without glamour or apotheosis. The plaintiff injected himself between the defendant and its tenants, let us grant, through official zeal and without any then idea of personal gain. But the result of his conduct was that he found that the defendant might sell the property for the amount of the original assessment. Yet, with this knowledge, he recommended to his official superiors a reduction of the assessment in a substantial amount. Then he went to the owner, no longer as a public officer, as he says, but as a private individual, after the assessment had been fixed, and sought employment from the owner in regard to the very property as to which he had just acted officially and as to which he might act again officially. While he may have gone as an individual, yet the panoply of his public office went with him. The rules which control the courts in declaring contracts void as against public policy are necessarily loosely defined. Every case is one unto itself. As to public officers, the courts will not enforce contracts between them and private individuals which have been brought about ex colore officii, and which are of such a nature, however brought about, that tends to interfere with the absolute duty of the officer to his official trust, then or thereafter. We think this contract of brokerage falls within the scope of this rule of law.

The judgment is unanimously affirmed, with costs.